RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0385p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee*,

*v.*

MICHAEL JEROME HENRY,

> *Defendant-Appellant*.

No. 19-2445

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cr-20233-1—Robert H. Cleland, District Judge.

Argued: October 20, 2020

Decided and Filed: December 18, 2020

Before: MERRITT, MOORE, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Dennis J. Clark, CLARK LAW FIRM PLLC, Detroit, Michigan, for Appellant. Kevin M. Mulcahy, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Dennis J. Clark, CLARK LAW FIRM PLLC, Detroit, Michigan, for Appellant. Kevin M. Mulcahy, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

MOORE, J., delivered the opinion of the court in which MERRITT, J., joined. GIBBONS, J. (pp. 21–34), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. This is Defendant Michael Jerome Henry's third time before the court. On this occasion, Henry appeals the district court's order finding that First Step Act § 403 did not apply to his resentencing. For the reasons set forth in this opinion, we **REVERSE** the district court's order holding the First Step Act is not applicable to Henry and **REMAND** for resentencing in accordance with First Step Act § 403.

## I. BACKGROUND

In October 2013, a jury convicted Henry of three counts of bank robbery, 18 U.S.C. § 2113(a), and three counts of using or carrying a firearm during a crime of violence, 18 U.S.C. § 924(c). R. 56 (2013 Jury Verdict Form) (Page ID #183–84). The three § 924(c) counts each related to conduct involved in the associated bank robbery count. *See id.* Before the First Step Act, a defendant's first § 924(c) conviction carried a mandatory-minimum sentence of five years' incarceration, and each additional § 924(c) conviction carried a sentence of twenty-five years' incarceration, even if the defendant's § 924(c) convictions were part of the same indictment. 18 U.S.C. § 924(c) (2015).

At Henry's sentencing hearing in July 2014, the district court sentenced him to 730 months' incarceration. R. 71 (2014 Judgment) (Page ID #250–52). For the three counts of bank robbery, the district court sentenced Henry to seventy months' incarceration for each count, to be served concurrently. R. 86 (2014 Sent'g Hr'g Tr. at 12) (Page ID #1082). The district court sentenced Henry to 60 months' incarceration for the first § 924(c) count, 300 months' incarceration for the second count, and 300 months' incarceration for the third count, with each to be served consecutive to all other counts. *Id.* at 15 (Page ID #1085).

On appeal, we reversed his second and third § 924(c) convictions because the Supreme Court's intervening decision in *Rosemond v. United States*, 572 U.S. 65 (2014), clarified the intent required for aiding and abetting the use or carrying of a firearm. *United States v. Henry*, 797 F.3d 371 (6th Cir. 2015) (*Henry I*). On remand, a jury again convicted Henry of the six

counts. R. 110 (Jury Verdict Form) (Page ID #1250). At his subsequent resentencing hearing, the district court sentenced Henry to 738 months' incarceration—seventy-eight months' incarceration for each bank robbery count, concurrent to each other, along with the mandatory-minimum sentences for the three counts of using or carrying a weapon during a crime of violence. R. 132 (2016 Sent'g Hr'g Tr. at 12–13) (Page ID #1832–33).

Henry again appealed to our court, arguing that (1) the government's evidence was not sufficient to support his convictions; (2) § 924(c)'s residual clause was unconstitutionally vague; and (3) there were other issues with his sentence unrelated to the present case. *United States v. Henry*, 722 F. App'x 496, 497–98 (6th Cir.), *cert. denied*, 139 S. Ct. 70 (2018) (*Henry II*). We rejected these arguments but remanded his case to the district court for resentencing in response to the Supreme Court's intervening decision in *Dean v. United States*, 137 S. Ct. 1170 (2017), which permitted district courts to consider mandatory-minimum sentences imposed under § 924(c) when determining the sentence for other counts. *Henry II*, 722 F. App'x at 501. At the time of Henry's 2016 resentencing, the Sixth Circuit's decision in *United States v. Franklin*, 499 F.3d 578 (6th Cir. 2007), prohibited the district court from considering the lengthy mandatory-minimum sentences for his § 924(c) convictions when sentencing him for the bank robbery convictions. *Henry II*, 722 F. App'x at 501. As a result, we "remand[ed] the case for the limited purpose of resentencing him and allowing the district court to consider the mandatory minimum sentences applicable to him." *Id.*

Between our remand and Henry's 2019 resentencing, Congress passed the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Prior to its enactment, individuals convicted of two § 924(c) charges faced a mandatory-minimum sentence of thirty years' incarceration regardless of their prior criminal history (five years for the first and twenty-five years for the second § 924(c) conviction) and twenty-five years' incarceration for each additional § 924(c) conviction. Under the First Step Act's new framework, only a defendant who has a prior final § 924(c) conviction is subject to the escalating mandatory-minimum sentences for a subsequent § 924(c) conviction. First Step Act, § 403(a) (codified at 18 U.S.C. 924(c)(1)(C)). In a section entitled "applicability to pending cases," Congress extended this amendment "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense

has not been imposed as of such date of enactment." First Step Act, § 403(b) (codified at 18 U.S.C. § 924 notes).

The district court ordered supplemental briefing on Henry's eligibility under the First Step Act. R. 149 (Order for Additional Briefing & Setting Briefing Deadlines) (Page ID #2058). Henry argued that our court's 2018 remand for resentencing meant that the district court had not imposed a sentence as of the date of enactment of the First Step Act, and, therefore, he could benefit from the First Step Act's amendment to § 924(c). R. 151 (Henry's Supp. Br. on the Applicability of the First Step Act) (Page ID #2076).

This question has significant implications for Henry. If we were to hold that First Step Act § 403 does not apply to Henry, then the district court correctly found that § 924(c) requires that he serve at least five years for his first count, and twenty-five years for each additional count—which entailed that Henry would serve at least fifty-five years of incarceration in addition to the sentence imposed for his bank robbery charges. However, if we were to conclude that First Step Act § 403 does apply to Henry, the mandatory minimum for each of Henry's § 924(c) counts is five years, for a total mandatory-minimum sentence of fifteen years of incarceration.

The district court held that Henry could raise the issue of whether he was eligible for resentencing under First Step Act § 403 but concluded that the provision did not apply to his resentencing. R. 155 (Op. & Order Determining Inapplicability of "First Step Act" & Denying Def.'s Mot. for Variance) (Page ID #2112). The district court sentenced Henry to sixty months' incarceration for each bank robbery conviction, concurrent to each other, along with the mandatory-minimum sentence of fifty-five years' incarceration for Henry's three convictions for using or carrying a weapon during a crime of violence. R. 163 (2019 Sent'g Hr'g Tr. at 18–19) (Page ID #2164–65); R. 159 (Am. J.) (Page ID #2130). Henry appeals this sentence.

## II. ANALYSIS

This case presents an issue of first impression in this circuit: whether First Step Act § 403 applies to a defendant at resentencing following a limited remand. We conclude that the text of the statute makes clear that § 403 applies to defendants whose cases have been remanded

for resentencing prior to the First Step Act's enactment, but who were not yet resentenced. This includes Henry, as our limited remand permitted the district court to consider the sentences for his § 924(c) convictions. Furthermore, our interpretation of § 403 is consistent with Congress's intent to end the practice of stacking lengthy mandatory-minimum sentences for § 924(c) upon enactment of the First Step Act.

## A. Standard of Review

We review questions of statutory interpretation de novo. *United States v. Wagner*, 382 F.3d 598, 606 (6th Cir. 2004). "When interpreting a statute, we begin with the plain meaning of the statutory language." *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015). This requires that we "look at the specific statutory language as well as the language and design of the statute as a whole." *United States v. Meyers*, 952 F.2d 914, 918 (6th Cir. 1992). "If the statutory language is not clear, we may examine the relevant legislative history." *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008). Finally, "[i]f the statute remains ambiguous after consideration of its plain meaning, structure, and legislative history, we apply the rule of lenity in favor of criminal defendants." *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000).

## B. The First Step Act

The First Step Act represents Congress's response to long-standing problems within the federal criminal justice system. The Act is the product of a remarkable bipartisan effort to remedy past overzealous use of mandatory-minimum sentences and harsh sentences for drug-offenders, as well as to facilitate access to rehabilitation programs and compassionate release. Groups ranging from law enforcement groups to civil rights groups supported the First Step Act. Senator Chuck Grassley Website, "Floor Statement by Senator Chuck Grassley of Iowa: Passage of the First Step Act of 2018," Dec. 18, 2018.

As part of this reform, Congress sought to ensure that stacking applied only to defendants who were truly recidivists. Stakeholders of the criminal justice system had criticized the practice

of stacking of mandatory minimum penalties for multiple § 924(c) convictions.**[1]** Congress's remedy, § 403, reads:

> SEC. 403. CLARIFICATION OF SECTION 924(C) OF TITLE 18, UNITED STATES CODE
>
> (a) IN GENERAL.—Section 924(c)(1)(C) of title 18, United States Code, is amended, in the matter preceding clause (i), by striking "second or subsequent conviction under this subsection" and inserting "violation of this subsection that occurs after a prior conviction under this subsection has become final".
>
> (b) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

In § 403(b), Congress departed from the general rule that reductions in criminal penalties are not retroactive. *See Dorsey v. United States*, 567 U.S. 260, 272 (2012); 1 U.S.C. § 109 ("The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide."). Instead, the First Step Act extended § 403(a) to defendants whose sentences had "not been imposed as of such date of enactment." First Step Act § 403(b).

Section 403 of the First Step Act reflects Congress's intent to end the harsh practice of stacking multiple § 924(c) sentences. Both the text of the statute and Congress's purpose in

---

**[1]** For instance, a 2011 report by the United States Sentencing Commission recommended that Congress eliminate the stacking of sentences for § 924(c) convictions for offenders who had not been convicted previously of a § 924(c) offense. U.S. Sentencing Comm'n, 2011 Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 359–62 (2011). The Judicial Conference, which opposes mandatory-minimum sentences, specifically decried "[t]he injustice of stacking mandatory minimum sentences." *See Hearings Before the Over–Criminalization Task Force of 2014 of the Committee on the Judiciary, House of Representatives* (June 11, 2014) (Testimony of Hon. Irene M. Keeley, Judicial Conference of the United States at 14, 16) ("The Judicial Conference also endorses an amendment to 18 U.S.C. § 924(c) to preclude the 'stacking' of counts and to clarify that additional penalties apply only when one or more convictions of such person have become final prior to the commission of such offense."); *see also Mandatory Minimum Sentences: Hearing Before the Subcomm. on Crime, Terrorism and Homeland Security of the H. Comm. on the Judiciary*, 111th Cong. 35 (2009) (statement of Hon. Julie E. Carnes, Judicial Conference) ("One of these statutes, the enhanced penalty section of section 924(c), is so draconian that the [Judicial] Conference has taken a specific position against it."); *Mandatory Minimum Sentencing Laws—The Issues: Hearing Before the Subcomm. on Crime, Terrorism & Homeland Sec. of the H. Comm. on the Judiciary*, 110th Cong. 45–50 (2007) (statement of Hon. Paul G. Cassell, Judicial Conference) (criticizing the practice of stacking).

enacting the legislation make clear that § 403 applies to defendants, like Henry, whose sentences were remanded prior to the First Step Act's enactment but who were not yet resentenced.

## C.  Text of the First Step Act

The plain language of § 403(b) supports our conclusion that the First Step Act applies to defendants, such as Henry, whose cases were remanded prior to the First Step Act's enactment but who were resentenced only after its enactment.  At the time of the First Step Act's enactment, Henry did not have "a sentence" for the purposes § 403(b), because we had remanded his case to the district court for resentencing.  Only when the district court "imposed" Henry's sentence for his various convictions at his 2019 resentencing did Henry have a sentence for the purposes of § 403.  Therefore, Henry is eligible for sentencing under First Step Act § 403.

Congress did not define the terms "a sentence" or "imposed" for the purposes of § 403(b).  Further, the Supreme Court has not, to date, considered the meaning of § 403(b).  Thus, we are left to determine whether § 403(b) applies to defendants whose sentences have been reversed and remanded for resentencing pursuant to a limited remand.

We have considered the applicability of § 403 in a previous case, *United States v. Richardson*, 948 F.3d 733 (6th Cir. 2020).  There we held the defendant was not eligible for resentencing under First Step Act § 403(a) when his case was pending on direct appeal at the time of the Act's enactment.  The facts in Richardson's case differ from the present case.  While Richardson's petition for certiorari was pending in the Supreme Court, Congress enacted the First Step Act.  *Id.* at 738.  The Supreme Court granted Richardson's petition, vacated our judgment, and remanded so we could "consider the First Step Act of 2018[']s]" application to Richardson.  *Id.*

We concluded in *Richardson* that the First Step Act § 403 did not apply to defendants who have been sentenced but have not exhausted their appeals when Congress enacted the First Step Act.  First, we rejected Richardson's argument that § 403 simply clarified existing law and therefore should be applied retroactively.  *Id.* at 746–48.  Second, we held that, for the purposes of First Step Act § 403, Richardson's sentence was "imposed" when the district court sentenced him, not when he exhausted his direct appeals.  *Id.* at 748–50.  In support, we cited numerous

statutes that use "impose" to describe when the district court sentences a defendant. *Id.* at 748–49 (citing 18 U.S.C. § 3742(a); 18 U.S.C. § 3553(a)). *Richardson*'s reading is consistent with *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 1237 (2020), which held that a defendant who had not exhausted his direct appeals could not claim the benefit of a different provision of the First Step Act with an identically worded subsection to § 403(b) (addressing First Step Act § 401).

Every other circuit that has considered this issue has held that First Step Act § 403 does not extend to defendants who were sentenced prior to the Act's enactment but had not yet exhausted their direct appeals. *See United States v. Smith*, 967 F.3d 1196, 1213 (11th Cir. 2020); *United States v. Voris*, 964 F.3d 864, 874–75 (9th Cir. 2020); *United States v. Gomez*, 960 F.3d 173, 177–78 (5th Cir. 2020); *United States v. Cruz-Rivera*, 954 F.3d 410, 412–13 (1st Cir. 2020); *United States v. Jordan*, 952 F.3d 160, 172–74 (4th Cir. 2020); *see also United States v. Pierson*, 925 F.3d 913, 927–28 (7th Cir. 2019), *cert. granted, judgment vacated on other grounds*, 140 S. Ct. 1291 (2020) (interpreting § 401, an analogous section of the First Step Act).

We have not yet considered whether § 403 applies to defendants at resentencing after the First Step Act's enactment. Two other circuits and two district courts within this circuit have reviewed cases involving similar issues and reached differing conclusions about whether First Step Act § 403 applies to defendants at resentencing.

Recently, the Seventh Circuit, sitting en banc, held that a defendant whose sentence had been vacated and remanded *prior to* the First Step Act's enactment was eligible for relief under First Step Act § 403. *United States v. Uriarte*, 975 F.3d 596 (7th Cir. 2020) (en banc). In *Uriarte*, a jury convicted the defendant of racketeering, drug crimes, and two counts of using a firearm to commit a kidnapping in violation of § 924(c). *Id.* at 598–99. At his initial sentencing, the district court determined that the defendant brandished, not merely used, a gun during the crimes, and therefore was subject to a mandatory-minimum sentence of seven years' incarceration for his first § 924(c) conviction. *Id.* at 599. On appeal, the Seventh Circuit held the defendant's sentence violated the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), which held that brandishing a weapon was an element of the § 924(c) charge. *United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016). The Seventh Circuit held that the

district court erred by finding defendant satisfied this element itself, rather than submitting it to the jury. *Id.* at 1001. As a result, the Seventh Circuit vacated Uriarte's sentence and remanded to the district court to allow the court to resentence him without the brandishing enhancement. *Id.* Between the Seventh Circuit's remand and the defendant's resentencing, Congress enacted the First Step Act. The district court held § 403(a) of the First Step Act applied to the defendant at his resentencing. *United States v. Uriarte*, No. 09-CR-332-03, 2019 WL 1858516, at *4 (N.D. Ill. Apr. 25, 2019).

The Seventh Circuit affirmed this holding that First Step Act § 403 applies to defendants whose sentences have been vacated and remanded prior to the enactment of the First Step Act. *Uriarte*, 975 F.3d at 601–03, 606. First, the Seventh Circuit noted that Congress legislates "against the background principle that a court resentences 'on a clean slate.'" *Id.* at 602 (quoting *Krieger v. United States*, 842 F.3d 490, 505 (7th Cir. 2016)). As "[t]he Supreme Court has reminded us," the court must presume "that our 'elected representatives, like other citizens, know the law'" when drafting legislation. *Id.* (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–97 (1979)). Accordingly, Congress understood this principle when drafting § 403. *Id.* Second, the Seventh Circuit rejected the government's argument that § 403(b)'s use of the indefinite article "a" to describe the sentence, rather than "the sentence," "the final sentence," or "a sentence that continues to legally bind the defendant," precludes defendant from benefiting from § 403(a). *Id.* at 602–04. The court noted that "one could draw significance from the fact that Congress did not use the words '*an original* sentence' or '*an initial* sentence.'" *Id.* at 604. If, as the government argues, Congress intended the First Step Act to apply only to defendants who had never been sentenced, "it could have used the word 'any,' as it did earlier in the same sentence: 'This section . . . shall apply to *any* offense . . . if a sentence . . . has not been imposed . . . .'" *Id.* (quoting First Step Act § 403(b)). Third, the Seventh Circuit concluded that a defendant's eligibility for resentencing under First Step Act § 403 is consistent with the court's ruling in *United States v. Pierson*, 925 F.3d 913 (7th Cir. 2019), which held that an analogous section did not apply to a defendant when the district court sentenced him prior to the First Step Act's enactment but he had not exhausted his appeals. "*Pierson* is consistent with Congress's intent not to reopen *finished* proceedings because of the change in the law effected by the First Step Act." *Id.* at 605. Congress, however, did not "want[] to deprive anyone without a set

sentence of the benefit of these new, preferred sentencing standards." *Id.* Finally, the court rejected the government's policy argument that permitting persons similarly situated to the defendant to benefit from the First Step Act is unfair to defendants who were initially sentenced before the Act's enactment but were not eligible for resentencing. *Id.* at 603. Simply put, "[a]t the time of the enactment of the First Step Act, Mr. Uriarte was a convicted, but unsentenced, federal defendant," and should benefit from the Act. *Id.* at 601.

The Third Circuit, by contrast, declined to apply First Step Act § 403 to a defendant's § 924(c) sentences after the court remanded his case to the district court to resentence him on his territorial charges only. *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020). *Hodge* involved facts different from *Uriarte* and the present case. In *Hodge*, a jury convicted the defendant of federal and territorial crimes for committing an armed robbery, along with two § 924(c) counts of discharging a firearm during the armed robbery. The district court sentenced him to 420 months' imprisonment for the § 924(c) convictions and to additional consecutive sentences on the territorial convictions. The Third Circuit held that two of his convictions violated the Virgin Islands' more stringent double jeopardy clause and remanded his case to the district court to vacate these convictions and resentence Hodge with respect to the territorial counts only. The court affirmed the sentence for the federal counts. *United States v. Hodge*, 870 F.3d 184, 197–99, 206 (3d Cir. 2017).

On remand, the district court in *Hodge* declined to apply the First Step Act because the Third Circuit had limited its remand to the defendant's unrelated territorial convictions. *See* 948 F.3d at 162 & n.3. The Third Circuit affirmed the district court's judgment and further stated that First Step Act § 403 did not apply to those initially sentenced prior to the Act but resentenced afterwards. *Id.* at 162. The court focused on § 403(b)'s use of "*a* sentence," rather than "*the* sentence, an *ultimate* sentence, or a *final* sentence" and lack of language indicating a final sentence. *Id.* at 163. Instead, the Third Circuit concluded that when Congress used the term "imposed," it intended to refer to the initial sentence imposed by the district court. *Id.* at 163–64. In dicta, the Third Circuit suggested that "drawing the line at initial-sentence imposition is preferable to drawing the line at ultimate-sentence imposition. If we let all defendants

awaiting resentencing capitalize on the First Step Act, we would favor defendants whose appeals—for whatever reason—took longer to resolve." *Id.* at 164.

Within our circuit, two district courts have considered the application of § 403 to defendants at resentencing and concluded that the defendant is eligible for resentencing under First Step Act § 403 when their sentence was vacated after the First Step Act's enactment.[2] *United States v. Crowe*, No. 16-12415, 2019 WL 7906591 (E.D. Mich. Aug. 28, 2019); *United States v. Jackson*, No. 1:15 CR 453-001, 2019 WL 2524786 (N.D. Ohio June 18, 2019). Both cases are pending on appeal.

We agree with the Seventh Circuit's interpretation of § 403, as it is consistent with the plain text of the statute.[3] First Step Act § 403(b) extends Congress's reforms of § 924(c) to "any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." We read "a sentence" to refer to a valid sentence at the time of the First Step Act's enactment, not merely a sentence in the past. Similarly, the subsection's use of "imposed" includes when the district court imposes a valid sentence at a defendant's resentencing.

The better reading of "a sentence" requires the defendant to have a valid sentence at the time of the First Step Act's enactment, not a sentence *at some point*. The government argues that § 403's use of "a sentence" rather than "the sentence" indicates that Congress intended the provision to apply only to those *never* sentenced prior to the First Step Act's enactment. Gov't Br. at 15. The government contends that "[t]he article 'a' denotes an unspecified thing, while the article 'the' generally indicates there is 'only one' particular person or thing." *Id.* (citations omitted). Thus, according to the government, if Congress intended to include persons resentenced after the First Step Act became law, it would have used "the sentence, an ultimate sentence, or a final sentence." *Id.* (quoting *Hodge*, 948 F.3d at 163). But, by the government's

---

[2]These cases differ from Henry's case in that their sentences were vacated and remanded *after* the First Step Act's enactment, whereas we remanded Henry's case for resentencing prior to its enactment.

[3]Although Henry's circumstances differ from the defendant in *Uriarte*, as we issued a limited remand, not a general one, the language of the remand here still permitted the district court to revisit his § 924(c) convictions. *See* Part II.F. Thus, for the purposes of the First Step Act § 403, Henry did not have "a sentence" at the time of the First Step Act's enactment.

argument, Congress could have easily used an "original sentence," "initial sentence," or "any sentence" if it had intended to limit the provision's application to those who had never been sentenced.  In fact, the subsection uses "any offense" in the clause immediately preceding "a sentence."  The government overlooks these alternative readings of "a" and places undue emphasis on this one-letter article.

Moreover, if we were to take the government's interpretation of "a sentence" to its logical conclusion, it would put us in the unusual position of giving effect to legal judgments subsequently vacated.  Our interpretation of § 403(b) avoids this illogical result.

We also disagree with the district court's and the government's interpretation of "imposed."  The government argues that Henry's sentence was imposed for the purposes of § 403 when the district court initially sentenced him and cites our opinion in *Richardson*.  Gov't Br. at 16.  Citing dicta in *United States v. Davis*, *Richardson* stated the defendant's sentence was "imposed" "when it is orally pronounced."  948 F.3d at 749 (citing *Davis*, 924 F.3d at 904–05).  However, this definition was used in juxtaposition with Richardson's final sentence after direct appeal, not after a resentencing, as in Henry's case.  Direct review differs from resentencing.  When our court reviews a sentence on direct appeal, that sentence remains "imposed" unless we vacate and remand for resentencing.  *See* 18 U.S.C. § 3742(f)(1) ("If the court of appeals determines that . . . the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate."  When we remand a case to the district court for resentencing, however, the district court on remand imposes a new sentence.  Further, in *Richardson*, we treated the defendant's *first resentencing* as the date his sentence was imposed, not the date of his *original sentencing*.  *Id.* at 737.[4]  This is

---

[4]In *Richardson*, we repeatedly emphasized that Richardson was resentenced more than one year before the Act's enactment.  *See, e.g.*, 948 F.3d at 737 ("[W]e hold that Richardson cannot benefit from the First Step Act because the district court resentenced him more than one year before the Act became law."); *id.* at 746 ("[C]ommon sense would seem to dictate that the Act does not apply to Richardson, since the district court resentenced him more than one year before the Act became law.").  Richardson's original sentencing occurred on December 3, 2013, more than 5 years prior to the First Step Act.  Judgment, *United States v. Richardson*, No. 5:11-20444 (E.D. Mich. Dec. 14, 2013), ECF No. 62.  His resentencing, which occurred on September 14, 2017, Amended Judgment, *United States v. Richardson*, No. 5:11-20444 (E.D. Mich. Sept. 22, 2017), ECF No. 84, is more aptly described as more than one year prior to the First Step Act.

consistent with our view that Henry's sentence was not imposed at his original sentencing for the purposes of § 403, but at his latest resentencing.

We have not adopted a singular definition of "imposed" that would preclude applying § 403(b) to Henry's case. In *United States v. Foreman*, we acknowledged that this circuit has adopted a multitude of definitions of "imposed." *United States v. Foreman*, 958 F.3d 506, 511 (6th Cir. 2020) ("Foreman attaches undue significance to the word 'impose.' To begin, 'impose' does not have the singular procedural connotation ascribed to it by Foreman."). Additionally, in other contexts, Congress has used the term "impose" to refer to a district court's resentencing of a defendant. For instance, 18 U.S.C. § 3742(g), which outlines the district court's obligations for "sentencing upon remand" uses the word "impose." When resentencing the defendant under § 3742, "[t]he [district] court shall not *impose* a sentence outside the applicable guidelines range except" in limited circumstances. § 3742(g)(2).

In sum, the plain text of § 403(b) supports applying to Henry the First Step Act's amendment to the sentences for § 924(c) convictions.

## D. Legislative History

The legislative history of § 403 further supports Congress's intent to apply § 403 to individuals whose cases were remanded prior to the Act's enactment but who were not yet resentenced at the time of its enactment. Though limited, the available legislative history evinces Congress's intent to ensure that the lengthy mandatory-minimum sentences for stacked § 924(c) convictions ended, whether at initial sentencings or resentencings.

In the course of passing the First Step Act, members of Congress drew attention to the harshness of § 924(c) stacking for first-time offenders, and the Act's attempt to mitigate it. *See, e.g.*, 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018) (statement of Rep. Cardin) (noting that the First Step Act "eliminates the so-called stacking provision in the U.S. Code, which helps ensure that sentencing enhancements for repeat offenses apply only to true repeat offenders"); 164 Cong. Rec. S7649 (daily ed. Dec. 17, 2018) (statement of Sen. Grassley) (noting the "need to make sure that criminal sentences are tough enough to punish and deter, but not . . . unjustly harsh," and recognizing "unfairness in how . . . mandatory minimum sentences are sometimes

applied"); 164 Cong. Rec. H10,362 (daily ed. Dec. 20, 2018) (statement of Rep. Nadler) (citing "stopping the unfair 'stacking' of mandatory sentencing enhancements for certain repeat firearms offenders" as one of the "changes recogniz[ing] the fundamental unfairness of a system that imposes lengthy imprisonment that is not based on the facts and circumstances of each offender and each case").

An amicus brief filed by Senators Durbin, Grassley, and Booker, the lead sponsors of the First Step Act, in a similar case before the Ninth Circuit Court of Appeals clearly shows Congress's intent to apply § 403 to persons whose sentences were vacated after the law's enactment. Brief for United States Senators Richard J. Durbin, Charles E. Grassley, and Cory A. Booker as Amici Curiae in Support of the Defendant-Appellant, *United States v. Mapuatuli* (9th Cir.) (No. 19-10233). The case, *United States v. Mapuatuli*, involves a defendant whose sentence was vacated after the First Step Act's enactment but who seeks to benefit from First Step Act § 401, which includes an applicability section identically worded to § 403(b).

The amicus brief by the Senators argues that applying the First Step Act to defendants whose sentences have been vacated and remanded after the First Step Act's enactment best advances the First Step Act's ameliorative purpose "to alleviate overly harsh and expensive mandatory minimums," and "reduce and restrict enhanced sentencing for prior drug felonies." *Id.* at 17 (citations omitted). If the court interpreted First Step Act § 401 to preclude defendants whose original pre-Act sentences have been vacated from benefiting from the First Step Act, it would "produce[] precisely the 'kind of unfairness that modern sentencing statutes typically seek to combat.'" *Id.* (quoting *Dorsey v. United States*, 567 U.S. 260, 277 (2012)). Although the brief addressed Mapuatuli's case, which differs from the present case in that the Ninth Circuit reversed and remanded Mapuatuli's sentence after the First Step Act's enactment, we conclude that this reasoning also logically applies to Henry's limited remand. *See* Part III.F.

Requiring the district court to resentence Henry pursuant to the pre-First Step Act sentencing regime for § 924(c) convictions is contrary to Congress's goal of ending the stacking of § 924(c) sentences for offenders without prior § 924(c) convictions. *See Abramski v. United States*, 573 U.S. 169, 179 (2014) (considering Congress's "purpose" in passing legislation when interpreting a statute). Congress recognized that such lengthy sentences for persons without any

prior final § 924(c) convictions were draconian and sought to end the practice. The problem that Congress sought to solve is apparent in Henry's case. Under the pre-First Step Act law, the district court must resentence Henry to at least 660 months' incarceration—five years' incarceration for his first § 924(c) conviction and twenty-five years' incarceration for each of his other two § 924(c) convictions. If the First Step Act applies at Henry's resentencing, however, the district court need only resentence Henry to 180 months' incarceration for his § 924(c) convictions—five years' incarceration for each of his three § 924(c) convictions. Therefore, permitting the district court to apply the First Step Act in Henry's case is consistent with Congress's goal to end the harsh practice of stacking multiple § 924(c) convictions.

The dissent implies that Congress's decision to make another provision of the First Step Act fully retroactive undercuts Henry's case. (Dissent Op. at 33). In the subsequent section of the First Step Act, Congress made reductions in the sentencing disparities between persons convicted of crack cocaine and powder cocaine offenses fully retroactive. First Step Act § 404. The present case requires that we determine whether § 403 extends to individuals already facing resentencing, not all persons previously sentenced to multiple § 924(c) convictions. First Step Act § 404 permits defendants previously sentenced to crack cocaine offenses to petition the district court to reduce their sentence. Congress chose not to disrupt the finality of past sentences and permit this onerous process for defendants serving stacked sentences. Instead, § 403 merely ensures that district courts end the harsh stacking rule in sentencings and resentencings going forward.

Altogether, the legislative history of the First Step Act demonstrates Congress's intent to remedy overly punitive mandatory-minimum sentences faced by defendants, including defendants resentenced after the Act's enactment.

**E. Rule of Lenity**

Even though we conclude after examining the statutory language, as confirmed by the legislative history, that § 403 is not ambiguous, we address Henry's alternative argument that the rule of lenity requires any statutory ambiguity be resolved in favor of Henry. "If the statute remains ambiguous after consideration of its plain meaning, structure and legislative history, the

rule of lenity is applied in favor of criminal defendants." *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001). This rule applies to both criminal statutes and criminal penalties. *Bifulco v. United States*, 447 U.S. 381, 387 (1980) ("[T]his principle of statutory construction applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose.").

Especially in light of the broad remedial goals of the First Step Act, we should construe any ambiguity in favor of Henry.

## F.  Limited Remand

Our conclusion that the First Step Act applies to Henry's resentencing does not change because we issued a limited remand in Henry's case. It is true that a limited remand constrains the issues that the district court may address. The limited remand in Henry's case, however, is broad enough to permit the district court to revisit the sentences for his § 924(c) convictions and resentence him in accordance with the First Step Act.

We may issue a limited remand or a general one. "[A] limited remand constrains the district court's resentencing authority to the issue or issues remanded." *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997). "[T]he district court is without authority to expand its inquiry beyond the matters forming the basis of the appellate court's remand." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). By contrast, a general remand "give[s] district courts authority to address all matters as long as remaining consistent with the remand." *Id.*

Here, the district court correctly concluded that this court issued a limited remand. To determine whether this court issued a limited remand or a general one, we examine the language of the remand. *Campbell*, 168 F.3d at 267–68 ("The key is to consider the specific language used in the context of the entire opinion or order."). The language used by the panel clearly conveys their intent to issue a limited remand. In *Henry II*, we "remand[ed] the case for the *limited purpose* of resentencing him and allowing the district court to consider the mandatory minimum sentences applicable to him." *Henry II*, 722 F. App'x at 501. We stated that "in light of yet another intervening Supreme Court decision, *see Dean v. United States*, 137 S. Ct. 1170 (2017), we must remand for the limited purpose of resentencing him in light of *Dean*." *Id.* at

498. Finally, at the conclusion of the opinion, we reiterated that "we affirm Henry's convictions but remand for the limited purpose of resentencing Henry in light of *Dean*." *Id.* at 501. In other cases, we have found analogous language to constitute a limited remand. *See, e.g.*, *United States v. Washington*, 714 F.3d 962, 965 (6th Cir. 2013) (granting a "limited remand" "for the 'limited purpose' of recalculating the defendant's sentence" after re-ordering the defendant's various § 924(c) convictions and applying the rule of lenity); *United States v. Simpson*, 546 F.3d 394, 396, 398 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009) (order) (holding the court could not consider arguments raised in defendant's pro se supplemental brief asserting errors in the indictment and an unconstitutional search because his "case was remanded for the limited purpose of resentencing light of *Booker*, and we lack authority to consider any issues on appeal that are beyond the scope of a limited remand"). Our repeated use of limiting language to delineate the scope of Henry's remand is consistent with a limited remand.

Even though we issued a limited remand in Henry's case, the remand itself permits the district court to revisit the sentences for his § 924(c) convictions and resentence him in accordance with the later enacted First Step Act.[5] In *Henry II*, we "remand[ed] the case for the limited purpose of resentencing him and allowing the district court to consider the mandatory minimum sentences applicable to him." 722 F. App'x at 501. The scope of the remand required the district court to reexamine his § 924(c) sentences in order to determine his bank robbery sentences. Consequently, in the process of determining the sentences for his § 924(c) convictions, it was appropriate for the district court to apply the First Step Act § 403.

In this regard, Henry's case is distinguishable from other cases in which defendants have sought to raise arguments at their resentencing that are unrelated to the limited remand. When faced with a limited remand, this court has repeatedly declined to entertain issues that are wholly unrelated to the scope of this court's remand. *See e.g.*, *Richardson*, 948 F.3d at 739 (holding defendant could not raise errors in his indictment and the trial court's jury instructions when the

---

[5]Henry also argues that a limited remand itself makes him eligible under First Step Act § 403. Given the nature of Henry's remand, we need not decide whether every defendant resentenced pursuant to a limited remand may be eligible for resentencing under the First Step Act § 403.

"order's plain language makes clear that we remanded the matter only to determine whether *Johnson* [*v. United States*, 135 S. Ct. 2551 (2015)] affects Richardson's sentence under § 924(c)"); *United States v. Patterson*, 878 F.3d 215, 217 (6th Cir. 2017) (holding the district court correctly rejected defendant's request to consider "any and all available legal arguments" when this court remanded for the purpose of resentencing the defendant as an armed career criminal). In *Hodge*, the Third Circuit's remand was distinct from the defendant's § 924(c) convictions. The defendant sought to argue the district court should apply the First Step Act when the Third Circuit's remand had affirmed the sentences on the federal convictions but had ordered the district court to vacate two territorial convictions because they violated the Virgin Islands' double jeopardy standards. By contrast, the limited remand in Henry's case requires the district court to reexamine the sentence for his § 924(c) convictions in order to apply the Supreme Court's ruling in *Dean*. Despite the dissent's contention, (Dissent Op. at 32), this distinction places Henry's case out of *Hodge*'s shadow.[6]

Therefore, we conclude that the language of the limited remand in Henry's case requires the district court to revisit the sentences for his § 924(c) convictions and to resentence him in accordance with the First Step Act. We recognize that applying the First Step Act to Henry and other defendants whose sentences were remanded prior to the First Step Act's enactment but who were resentenced after its enactment may produce some sentencing disparities between defendants who were resentenced prior to First Step Act's enactment and those sentenced after its enactment. Henry's case certainly implicates fairness considerations. Indeed, in many of the cases we remanded in light of *Dean*,[7] the defendant was resentenced prior to the enactment of the

---

[6]The dissent cites two unpublished cases addressing *Dean*, *Bennett v. Terris*, No. 17-2308, 2018 WL 5749202 (6th Cir. July 13, 2018), and *United States v. Williams*, 737 F. App'x 235 (6th Cir. 2018) (Dissent Op. at 28–29). *Bennett* addresses an unrelated legal issue—whether Bennett's § 2241 petition falls within the subset of § 2241 petitions challenging a sentence that are permitted by *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016). Moreover, *Bennett* preceded the First Step Act's enactment and had no reason to address whether *Dean* could impact § 924(c) sentences for the purposes of the First Step Act. Finally, *Bennett* is an unpublished Rule 34 order issued in response to a pro se defendant. In *Williams*, as in *Bennett*, Congress had not enacted the First Step Act at the time of Williams's resentencing. Further, the remand in *Williams* was more constraining to the district court than that in Henry's case.

[7]*See* Amended Judgment, *United States v. Williams*, No. 1:15-cr-10015 (W.D. Tenn. October 24, 2018), ECF No. 88; Amended Judgment, *United States v. Person*, No. 2:13-cr-00217 (S.D. Ohio June 12, 2018), ECF No. 221. In another case, *United States v. Carpenter*, No. 2:12-cr-20218 (E.D. Mich.), this court issued a general

First Step Act and may be in a different position with respect to § 403.**8** We do not resolve here how § 403 applies in these other cases; we emphasize that we are not deciding the full reach of First Step Act § 403 in other situations.

Sentencing disparities are the consequence of Congress's decision to refrain from making § 403 fully retroactive. Given that some disparities will exist in any event, they should not prevent Henry from benefiting from First Step Act § 403. As the Supreme Court noted in *Dorsey v. United States*, 567 U.S. 260, 280 (2012), "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences" without making these changes fully retroactive. Congress could have made § 403 fully retroactive and permitted district courts to reopen the proceedings of eligible defendants with multiple § 924(c) convictions. In the next section of the First Step Act, Congress made the Fair Sentencing Act, which reduced crack cocaine sentencing disparities, fully retroactive. First Step Act § 404. But Congress did not choose that path for § 403. At the same time, Congress did not make § 403 fully prospective. Instead, Congress chose the middle path by drafting § 403(b) to ensure district courts ended stacking with the First Step Act's enactment. Consistent with Congress's ameliorative goal in passing the First Step Act, we should interpret this provision in favor of inclusion. We do so here, based on the plain language of § 403, as well as the intent of Congress and the rule of lenity.

---

remand for resentencing in light of *Dean* after the First Step Act's enactment. *United States v. Carpenter*, 788 F. App'x 364 (6th Cir. 2019). The district court has not yet resentenced Carpenter.

**8**Any disparities that may exist between defendants resentenced prior to the First Step Act's enactment and those sentenced after its enactment need not be absolute. A growing number of district courts have concluded that First Step Act § 403's reduction in the sentences for multiple § 924(c) convictions is an "extraordinary and compelling circumstance[]," which, in addition to medical and other concerns, merits compassionate release or a reduction in sentence. *See, e.g.*, *United States v. Young*, 458 F. Supp. 3d 838, 848 (M.D. Tenn. 2020) (finding extraordinary and compelling reasons exist to grant motion to reduce sentence under 18 U.S.C. § 3582(c) to defendant where defendant would have been sentenced to 25 years' incarceration for his § 924(c) convictions instead of 85 years' incarceration and defendant had numerous medical conditions); *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *4 (E.D. Mich. Aug. 13, 2020) (finding First Step Act § 403, defendant's rehabilitation, and his young age at the time of the offense are extraordinary and compelling reasons to grant motion to reduce sentence under 18 U.S.C. § 3582(c)); *cf. United States v. Avery*, No. 2:07-cr-20040-2, 2020 WL 3167579, at *7 (W.D. Tenn. June 9, 2020) (finding the defendant was not entitled to compassionate release because aside from First Step Act § 403, the defendant could show no compelling reasons for relief). We have not, however, considered yet whether any disparity between pre-First Step Act stacked sentences for § 924(c) convictions and post-First Step Act sentences for § 924(c) convictions is an extraordinary circumstance for compassionate release purposes.

### III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order and we hold that First Step Act § 403 applies to Henry.  We **REMAND** for resentencing in accordance with First Step Act § 403 and this opinion.

———————————

**DISSENT**

———————————

JULIA SMITH GIBBONS, Circuit Judge, dissenting. The First Step Act applies to pending cases if "a sentence for the offense has not been imposed" by the date of the Act's enactment. Two years before Congress enacted the First Step Act, the district court sentenced Henry to the mandatory minimum 55 years' imprisonment for his § 924(c) convictions. On appeal, we affirmed Henry's § 924(c) convictions and sentence. We issued a limited remand for the sole purpose of allowing the district court to consider whether to reduce the sentences for Henry's bank robbery convictions. Because the § 924(c) sentence remained untouched, Henry was still subject to "a sentence" when Congress enacted the First Step Act later that year. For that reason, Henry cannot take advantage of the First Step Act at resentencing. I respectfully dissent.

I.

18 U.S.C. § 924(c) makes it a crime to use or possess a firearm "during and in relation to any crime of violence." § 924(c)(1)(A). There are two elements to this offense: the defendant must have (1) committed a predicate "crime of violence" and (2) used or possessed a firearm while doing so. Section 924(c) does not set the penalties for the predicate crime of violence; it only requires that some violent crime has been committed.

At the time that Henry was sentenced in 2016, § 924(c) required a mandatory minimum sentence of five years imprisonment for the first violation and a mandatory minimum of 25 years for each subsequent conviction, even if all the crimes were charged in the same indictment. § 924(c)(1)(A)(i)–(C)(i). This so-called stacking rule resulted in harsh penalties for defendants charged with § 924(c) violations for the first time, as evinced by this case. In one indictment, Henry was charged and subsequently convicted of three counts of violating § 924(c) for committing bank robbery (the crime of violence) with a firearm. Those convictions resulted in a mandatory minimum sentence of 55 years' imprisonment. Henry was also convicted of three

counts of bank robbery and sentenced to 78 months' imprisonment, to run consecutively to his § 924(c) sentence.

Section 403(a) of the First Step Act eliminated the stacking rule for offenders committing § 924(c) violations for the first time. Pub. L. 115–391, sec. 403(a), 132 Stat. 5194, 5221–22 (2018). Section 403(b) made that change retroactive to pending cases "if a sentence for the offense has not been imposed" by the date the First Step Act was enacted. When the First Step Act passed, Henry was awaiting resentencing following our limited remand "in light of *Dean*." *United States v. Henry*, 722 F. App'x 496, 501 (6th Cir. 2018) *(Henry II)*. As I explain, our limited remand did not affect the sentence that had already been imposed for Henry's § 924(c) convictions.

Before the Supreme Court's decision in *Dean v. United States*, 137 S. Ct. 1170 (2017), we required district courts to ignore the mandatory minimum sentence required under § 924(c) when considering the sentence for the predicate crime of violence. *See United States v. Franklin*, 499 F.3d 578, 586 (6th Cir. 2007). In other words, the district court had to "calculate the appropriate term of imprisonment for each individual [predicate] offense . . . disregard[ing] whatever sentences the defendant may also face on other counts." *Dean*, 137 S. Ct. at 1176. The Supreme Court reversed, holding that "[n]othing in § 924(c) restricts the authority conferred on sentencing courts . . . to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." *Id*. at 1176–77. In other words, district courts could consider the long sentence mandated by § 924(c) when determining the sentence for the predicate crime of violence.

When Henry was last before us, we recognized that *Dean* abrogated *Franklin*. District courts were now "permitted to consider, but not required to consider, the mandatory minimum sentences imposed by § 924(c) when deciding whether to depart from the Guidelines sentence for the predicate crimes." *Henry II*, 722 F. App'x at 500–01. Recognizing that the district court might have considered the length of the sentence mandated by § 924(c)—55 years in this case— when determining the sentence for the bank robbery convictions, we "remand[ed] the case for the limited purpose of resentencing him and allowing the district court to consider the mandatory minimum sentences applicable to him." *Id*. at 501.

The district court properly treated the remand as limited.  Although the district court determined that it had jurisdiction to entertain Henry's argument about the First Step Act, the court concluded that since Henry was "not facing plenary resentencing," the First Step Act did not apply "because the court has already imposed a sentence for Defendant's § 924(c) convictions."  DE 155, Op. and Order Re: First Step Act, Page ID 2120–22.  Rather, "[t]he scope of the Sixth Circuit's remand [was] narrow and left undisturbed Defendant's firearm convictions."  *Id*. at 2120.  The district court correctly understood that we remanded the case solely to allow the court to decide whether to decrease Henry's sentence for his bank robbery convictions with the benefit of considering the minimum 55-year sentence mandated by § 924(c).

Although the majority agrees that we issued a limited remand, the majority concludes that our limited remand "is broad enough to permit the district court to revisit the sentences for his § 924(c) convictions."  Maj. Op. at 21.  In my view, giving the district court an opportunity to reduce the sentence for the predicate crime of violence did not disturb the sentence for the § 924(c) offenses.  Henry was therefore subject to "a sentence" for the offense of violating § 924(c) when the First Step Act passed and is ineligible to be resentenced under it.

## II.

The text of the First Step Act makes clear that it does not apply to Henry.  The First Step Act applies if "a sentence for the offense has not been imposed."  Pub. L. 115–391, sec. 403(b), 132 Stat. 5194, 5221–22 (2018).  The district court "imposed" the mandatory minimum sentence of 55 years' imprisonment for "the offense" of violating § 924(c) when it sentenced Henry in 2016.  When Henry was last before us, we remanded the case to allow the district court to consider only whether to reduce Henry's bank robbery sentences in light of intervening Supreme Court precedent.  Because Henry was still subject to "a sentence" for his § 924(c) convictions when the First Step Act passed, the Act does not apply at resentencing.

## A.

Unlike the majority, I see significance in the First Step Act's use of "a" instead of "the" to modify "sentence."  The government argues that because the article "a" "points to a nonspecific . . . thing . . . that is not distinguished from the other members of a class," the phrase

"a sentence" refers to any past sentence, even if subsequently vacated. *See* Bryan A. Garner, Garner's Modern English Usage 991 (4th Ed. 2016); CA6 R. 18, Appellee's Br., at 20–21. By contrast, the article "the" indicates that there is "only one" particular person or thing, so had Congress written "the sentence," that might have indicated that the statute applied only to the final or ultimate sentence. If Congress intended the First Step Act to apply to anyone whose sentence had not become final, it could have used "the sentence," "the final sentence," or "the ultimate sentence."[1] *United States v. Hodge*, 948 F.3d 160, 163 (3d Cir. 2020), cert. denied sub nom. *Hodge v. United States*, No. 19-8890, 2020 WL 5883242 (U.S. Oct. 5, 2020); *cf. United States v. Richardson*, 948 F.3d 733, 748 (6th Cir. 2020), cert. denied sub nom. *Richardson v. United States*, No. 19-8878, 2020 WL 5883230 (U.S. Oct. 5, 2020).

The majority rejects this argument because it "places undue emphasis on this one-letter article." Maj. Op. at 15. In the majority's view, "Congress could have easily used 'an original sentence,' 'initial sentence,' or 'any sentence' if it had intended to limit the provision's application to those who had never been sentenced." *Id.* As the majority points out, adopting the government's position that "a sentence" refers to any past sentence, even if reversed on appeal, "would put us in the unusual position of giving effect to legal judgments subsequently vacated." *Id.* But we need not decide whether the First Step Act applies to a defendant whose sentence was vacated prior to enactment, because it is clear in this case that our limited remand did not vacate, modify, or affect Henry's sentence for his § 924(c) convictions.

After correcting an error in a defendant's conviction or sentence, we have broad discretion to issue a general or a limited remand to the district court. *See* 28 U.S.C. § 2106; *United States v. Foster*, 765 F.3d 610, 613 (6th Cir. 2014). The "district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). A general remand allows the district court to "redo the entire sentencing process, including considering new evidence and issues." *United States v. Mullet*, 822 F.3d 842, 852 (6th Cir. 2016) (quoting *United States v. McFalls*, 675 F.3d 599, 604 (6th Cir. 2012)). "The

---

[1]In contrast, the immediately preceding subsection, § 403(a), "discusses sentence finality." *Hodge*, 948 F.3d at 163; *see* § 403(a). I would decline to "equate § 403(b) with finality" where "it makes no mention of finality, and . . . § 403(a) expressly discusses finality." *Hodge*, 948 F.3d at 163.

policy underlying the presumption of de novo resentencing is to give the district judge discretion to consider and balance all of the competing elements of the sentencing calculus." *Campbell*, 168 F.3d at 265. A limited remand, on the other hand, "explicitly outline[s] the issues to be addressed by the district court and create[s] a narrow framework within which the district court must operate." *Id.* "The point of the limited remand is to inform the district court that a discrete issue has caused the need for review, but that complete reconsideration on resentencing is unnecessary and unwarranted." *Id.* at 266.

The majority agrees that the remand here was limited. It was "not an invitation to start from scratch, and it was not an invitation to conduct a new sentencing hearing." *United States v. Patterson*, 878 F.3d 215, 218 (6th Cir. 2017). But while we agree that the remand was limited, the majority fails to adequately consider what a limited remand means in terms of the imposition of a criminal sentence. A limited remand does not require the district court to begin anew because the defendant has *already* been sentenced.

When a sentence is vacated on direct appeal and returned to the district court on a general remand, the "defendant is entitled to a resentencing hearing where he may exercise the right to be present and allocute as provided by Rules 32 and 43 of the Federal Rules of Criminal Procedure," and the district court must "state 'in open court' the reasons underlying the imposed sentence." *United States v. Garcia-Robles*, 640 F.3d 159, 164 (6th Cir. 2011). In *United States v. Kurlemann*, we made clear that upon a general remand the district court must "conduct[] de novo sentencing procedures," and "re-visit the matter with a completely open mind." 736 F.3d 439, 454 (6th Cir. 2013); *see also United States v. Jennings*, 83 F.3d 145, 151 (6th Cir. 1996) (holding that sentencing upon general remand "is to be de novo," requiring the district court to consider new objections to the presentence report).

Following a limited remand, the defendant is not automatically entitled to all the same procedures he enjoyed at his first sentencing, although "there may be circumstances that require the presence of the defendant, mandate a sentencing hearing, or call for the pronouncement of sentence in open court." *United States v. Woodside*, 895 F.3d 894, 903 (6th Cir. 2018) (Stranch, J., concurring), cert. denied 139 S. Ct. 1320 (2019). Following a limited remand, the district court is often not required to "begin anew" and may "rely upon the procedural rights provided to

the defendants prior to remand."**²** *Garcia-Robles*, 640 F.3d at 166. For instance, we have held that "the right to allocute" under Rule 32 does not apply at resentencing following a limited, instead of general remand. *Jeross*, 521 F.3d at 585. In *Jeross*, we issued a limited remand of the defendants' sentences for drug convictions, "the sole purpose of which was to 'allow[] the court to determine if it would have granted a different sentence, had it known at the time of the [initial] sentencing that the Sentencing Guidelines were advisory, not mandatory.'" *Id.* at 585–86 (alterations in original) (quoting *United States v. Haynes*, 468 F.3d 422, 425 (6th Cir. 2006)). Although the defendants' right to speak "before [the court] impos[es] sentence," Fed. R. Crim. P. 32, is "essential," we held that, in a limited remand, "Rule 32 requires allocution only before a court imposes the *original* sentence on a defendant, and does not require allocution at resentencing." **³** *United States v. Garcia-Robles*, 640 F.3d 159, 165 (6th Cir. 2011) (quoting *Jeross*, 521 F.3d at 585).

Likewise, we held that the district court was not obligated at resentencing to "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), following a limited remand to recalculate the drug quantity attributable to the defendant. *Woodside*, 895 F.3d at 900. We reasoned that § 3553(c) applied "at the time of sentencing," which "read naturally, refers to a defendant's sentencing hearing." *Id.* The "term sentencing in legal as in ordinary language refers to the pronouncing of sentence by the judge in open court." *Id.* (quoting *Downs v. United States*, 879 F.3d 688, 690 (6th Cir. 2018)). We concluded that § 3553(c) was satisfied by the defendant's initial sentencing hearing because the statute "applies on remand if and only if that remand requires or entails a new sentencing hearing," and "the remand from [the defendant's] prior appeal did not entitle him to a new sentencing hearing nor did the district court choose to hold one." *Id.* "[A]s in *Jeross*, the remand did not require the district court to start over" because it required only that the district court "'show its work' with respect to its drug-quantity calculation, which it did in the amended judgment." *Id.* at 900–01.

---

**²**Although not required, the district court may itself decide to provide additional procedures. *See United States v. Jeross*, 521 F.3d 562, 586 (6th Cir. 2008).

**³**But "[w]hen a defendant's sentence is vacated, allocution is permitted upon resentencing because the defendant's sentence is neither final, nor fixed." *Garcia-Robles*, 640 F.3d at 165. "[T]he opportunity to address the court at a subsequent hearing arises precisely because the scope of punishment is not preordained." *Id.* (quoting *United States v. Barnes*, 948 F.2d 325, 329 (7th Cir. 1991)).

And, like *Jeross*, "the district court . . . relied on the same record and imposed the same sentence as in the first go-around." *Id*. at 901.

*Jeross* and *Woodside* were both premised on the notion that because "a sentence" had already been imposed, the defendants were not entitled to the full array of procedural protections at resentencing. We remanded *Henry II*, like *Jeross* and *Woodside*, for resentencing on a very limited issue: whether to reduce the sentence for the bank robbery convictions. The limited remand "did not require the district court to start over," *Woodside*, 895 F.3d at 900, because "the scope of punishment" was "preordained," *Garcia-Robles*, 640 F.3d at 165 (quoting *Barnes*, 948 F.2d at 329). It is true that "the sentence" or the "final sentence" was yet undetermined, but "a sentence" for violating § 924(c) had been imposed. And, as in *Jeross* and *Woodside*, "the district court . . . relied on the same record . . . as in the first go-around." *Woodside*, 895 F.3d at 901.

While the majority agrees that we issued a limited remand, it argues that the "scope of the remand required the district court to reexamine [Henry's] § 924(c) sentences in order to determine his bank robbery sentences." Maj. Op. at 23. Therefore, the majority concludes, "in the process of determining the sentences for his § 924(c) convictions, it was appropriate for the district court to apply the First Step Act § 403." *Id*. But the scope of the remand did not require the district court to "reexamine" Henry's convictions for the gun crimes. Rather, our remand permitted "the district court to consider the mandatory minimum sentences applicable" under § 924(c), 55 years in this case, when determining the sentences for the bank robbery convictions. *Henry II*, 722 F. App'x at 501.

The most obvious reason that our remand did not encompass a "reexamin[ation]" of Henry's gun convictions is that it likely would have exceeded the district court's mandate had it *increased* Henry's sentence on the § 924(c) convictions. While the § 924(c) convictions carried a minimum sentence, the district court could have sentenced Henry up to life imprisonment. § 924(c)(1)(C)(i) (2016). But had the district court done so at resentencing, that almost certainly would have exceeded the scope of the court's mandate to consider only the issue of whether Henry's bank robbery sentences should be reduced. If the issue of *increasing* Henry's sentence

for the § 924(c) convictions was not on the table, it is illogical to conclude that *decreasing* the sentence was within the court's mandate.

We have addressed the limited implications of *Dean* on sentences imposed for § 924(c) convictions, albeit in a different legal context.  In *Bennett v. Terris*, the defendant was sentenced to 50 years for bank and armed robbery and five counts of violating § 924(c).  No. 17-2308, 2018 WL 5749202, at *1 (6th Cir. July 13, 2018).  After filing various appeals and post-conviction motions, the defendant filed a habeas petition pursuant to 28 U.S.C. § 2241 requesting that he be resentenced in light of *Dean*.  *Id*.  We denied the petition because the defendant did "not argue that application of *Dean* would eliminate any of his § 924(c) convictions or in any way affect any of his sentences on those crimes."  *Id*. at *2.  Instead, the defendant was "arguing that the district court might, with the benefit of *Dean*, exercise its discretion to formulate a sentence on the non-mandatory predicate convictions in a different way than it actually did."  *Id*.  While *Bennett* dealt with a habeas petition, its logic applies with equal force to this case: *Dean* does not "eliminate . . . § 924(c) convictions or in any way affect any of [the] sentences on those crimes." *Id*.

Likewise, in another case, the district court rightly considered our remand order "in light of *Dean*" to be quite limited.  In *United States v. Williams*, we were presented with a defendant who had been convicted of attempted bank robbery, violating § 924(c), and being a felon in possession of a firearm.  737 F. App'x 235, 236 (6th Cir. 2018).  We determined that resentencing was appropriate because "[h]ad the district court known it could consider Williams's 10-year mandatory sentence under § 924(c) when determining his sentence for [the other convictions] it might have sentenced him differently."  *Id*. at 243.  We thus remanded the case "for the limited purpose of allowing the district court to consider Williams's § 924(c) mandatory minimum sentence in resentencing Williams."  *Id*.

On remand in *Williams*, the district court imposed the same sentence.  The district court characterized the nature of the remand as "very limited," stating that the "only issue . . . before the [c]ourt today" was that the court "may, but is not required to, consider the fact that there is that additional mandatory minimum sentence that is added on to the predicate sentence in determining what the ultimate sentence might be in [the defendant's] case."  17-5120, DE 92,

Resent. Tr., Page ID 330. The court declined to call the victim for testimony, relying instead on notes from the original sentencing. *See* Fed. R. Crim. P. 32(i)(4)(B). The defendant argued that the mandatory minimum required by § 924(c) was a "sufficient deterrent" to account for the attempted bank robbery conviction. The court ultimately found those arguments unpersuasive and instituted the same sentence. The First Step Act had not yet passed at the time of Williams's resentencing, but the district court did not view our limited remand as an invitation to reevaluate Williams's sentence for his § 924(c) conviction. "A sentence" for the 924(c) offense had already been imposed.

Like the defendants in *Bennett* and *Williams*, Henry was subject to a legally valid sentence for violating § 924(c) when the First Step Act passed. While our remand meant that Henry's ultimate or final sentence for all his convictions was not yet final, "a sentence" for violating § 924(c) had already been imposed. Congress chose the word "a" to modify "sentence," and "a" simply does not have the same meaning as "the" or "any." "[W]e must 'give effect, if possible, to every clause and word of a statute.'" *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)). And because Henry was subject to "a sentence" for his § 924(c) convictions at the time that the First Step Act was passed, I would hold that the First Step Act does not apply to his resentencing.

B.

The language "for the offense" further buttresses my conclusion that the First Step Act does not apply to Henry. Section 403 of the First Step Act addressed only the stacking rule for first-time offenders and did not modify or disturb the sentences applicable to the predicate "crime of violence." Section 403(a) amended § 924(c) to require the first firearms conviction to "become final" before subjecting the defendant to stacked 25-year minimum sentences for each subsequent violation. Section 403(b) made that change retroactive to pending cases "if a sentence for the offense has not been imposed." The context of § 403 indicates that "the offense" refers specifically to the firearms offense criminalized under § 924(c) and not the predicate crime of violence, for which § 924(c) does not itself impose penalties. Our limited remand affected neither element of what a § 924(c) conviction requires: the commission of some crime of violence with a firearm. The remand order allowed the district court to consider only

whether to reduce Henry's sentences for his bank robbery convictions, and it did not permit the district court to reexamine the appropriateness of his conviction or sentence under § 924(c). Therefore, Henry was still subject to a sentence for "the offense" of violating § 924(c) when the First Step Act passed.

C.

The majority concludes that the word "imposed" refers to Henry's most recent resentencing, and so the First Step Act applies because "Henry did not have 'a sentence' for the purposes [of] § 403(b)" at the time the Act passed. Maj. Op. at 8. However, I do not read "imposed" to have such a singular meaning, and neither does our case law.

We have held that "a sentence is 'imposed' when the trial court announces it, not when the defendant has exhausted his appeals from the trial court's judgment." *Richardson*, 948 F.3d at 748. We have also held that a sentence is "imposed" when the district court "conducts a plenary resentencing" or "engages in a limited modification or reduction of an existing sentence." *United States v. Foreman*, 958 F.3d 506, 511 (6th Cir. 2020). However, *Foreman* did not say that a modified sentence "imposed" at resentencing somehow "un-imposes" the original sentence. We have also held that the language of Federal Rule of Criminal Procedure 32, which requires the court to provide the defendant with an opportunity to speak "[b]efore imposing sentence," applies "only before a court imposes the *original* sentence on a defendant" and not at resentencing following a limited remand. *Jeross*, 521 F.3d at 585.

These varying definitions confirm that "'impose' does not have the singular procedural connotation ascribed to it" by Henry. *Foreman*, 958 F.3d at 511. The majority concludes that these varying definitions mean that "[w]e have not adopted a singular definition of 'imposed' that would preclude applying § 403(b) to Henry's case." Maj. Op. at 16. However, our liberal use of "imposed" does exactly that. While it is semantically correct to say that the district court "imposed" the final sentence at resentencing, it is equally correct to say that the district court "imposed" a sentence for the § 924(c) convictions at Henry's 2016 sentencing hearing. Since a sentence was imposed before the First Step Act passed in 2018, Henry is ineligible for resentencing under it.

III.

This interpretation of the First Step Act is in line with the two other circuits to have considered the issue.  The Seventh Circuit held that the First Step Act applied when a defendant's sentence had been vacated and the case remanded for plenary sentencing at the time the Act was passed.  *United States v. Uriarte*, 975 F.3d 596, 603, 606 (7th Cir. 2020).  The Third Circuit held that the First Step Act did not apply following a limited remand to address an entirely unrelated territorial law issue.  *Hodge*, 948 F.3d at 162.

Both courts began by determining the nature of the remand for resentencing.  In *Uriarte*, the decision was expressly limited to cases in which the defendants' "sentence had been *vacated fully* and who were *awaiting the imposition of a new sentence*."  *Uriarte*, 975 F.3d at 602. (emphasis added).  The Seventh Circuit concluded that it had issued a "general remand" requiring "plenary resentencing" because "the district court had structured [the] sentence on the basis of an *Alleyne* error, and . . . it was impossible to 'unbundle' this error from the rest of his sentence."  *Id*. at 600 n.2.  Unlike a limited remand, in which the court "returns the case to the trial court but with instructions to make a ruling or other determination on a specific issue or issues *and do nothing else*," the court had instead "vacated [the] sentence, rendering it a nullity, and directed the district court to resentence [the defendant]."  *Id*.; *id*. at 601.  The defendant was thus "unsentenced" at the time the First Step Act was enacted.  *Id*.  Under those circumstances, "[t]here is no reason to think that Congress excluded from its remedy pre-Act offenders facing plenary resentencing," because those "offenders whose sentences have been vacated are similarly situated to individuals who have never been sentenced."  *Id*. at 603.

In *Hodge*, the court's earlier opinion had "explicitly 'affirmed'" the defendant's federal charges, including his § 924(c) convictions, and so "[o]nly [the defendant's] territorial sentence remained at issue on remand."  *Hodge*, 948 F.3d at 162 n.3.  "Given this express direction," the Third Circuit determined that the district court "would have impermissibly 'deviate[d] from the mandate issued by an appellate court'" had it reconsidered the defendant's § 924(c) convictions.  *Id*. (quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)).  It was in light of this limited remand that the court concluded that "the First Step Act intentionally subjected any defendant who already had any sentence imposed to the original § 924(c) mandatory minimum, even if

their sentence was subsequently *modified*." *Id*. at 163 (emphasis added). Unlike in *Uriarte*, the Third Circuit did not have cause to consider whether the First Step Act applied to a sentence that had been entirely *vacated*.

This case fits neatly with *Uriarte* and *Hodge*. In *Uriarte*, the court vacated the defendant's § 924(c) conviction and sentence, so there was no sentence imposed at the time the First Step Act passed. In *Hodge*, the court remanded the case for the sole purpose of addressing entirely unrelated territorial offenses, so a sentence for the firearms offenses had already been imposed when the Act passed. Here, the remand order was at least related to § 924(c) in the sense that it allowed the district court to reassess the sentence for the predicate "crime of violence." But although the remand was tangentially related to § 924(c), it did not disturb Henry's sentence for those convictions. We can leave the issue presented in *Uriarte* for another day, when faced with a defendant who had his sentence vacated.

This case is too similar to *Hodge* to warrant a reasoned departure. In both cases, a sentence for violating § 924(c) had been imposed before the First Step Act passed. The limited remands did not affect the § 924(c) sentences. Therefore, both defendants are ineligible for resentencing under the First Step Act. The majority creates a circuit conflict where none should exist.

## IV.

Because "legislative history can never defeat unambiguous statutory text," I would end my analysis here. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1750 (2020). But the majority argues that the legislative history of the First Step Act confirms that Congress intended the Act to apply to people like Henry. The majority cites statements from members of Congress that "drew attention to the harshness of § 924(c) stacking for first-time offenders," as well as an amicus brief filed by senators in an analogous case pending before the Ninth Circuit. Maj. Op. at 17–18. To the extent that the majority attempts to glean meaning from the amicus brief, it has little probative value because it "has no special insight regarding the intent of a past legislative body." *Laborers' Local 265 Pension Fund v. iShares Tr.*, 769 F.3d 399, 409 (6th Cir. 2014); *see also*

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.")

In any event, legislative history decrying the harshness of the stacking rule for first-time offenders does not advance Henry's case.[4] As the majority recognizes, Congress declined to make § 403 fully retroactive, unlike other portions of the First Step Act. In the very next section, Congress made the Fair Sentencing Act, which reduced crack cocaine sentencing disparities, fully retroactive, allowing defendants previously sentenced under the harsher rules to petition the court to reduce their sentences. Pub. L. 115–391, sec. 404(b), 132 Stat. 5194, 5222 (2018). Despite the professed severity of the stacking rule for first-time offenders, Congress declined to allow defendants sentenced under it a similar opportunity to reduce their sentences.

That the stacking rule is harsh tells us nothing about which defendants Congress sought to protect, because the stacking rule is no less harsh to defendants resentenced before the First Step Act passed. Applying the First Step Act to people like Henry "would favor defendants whose appeals—for whatever reason—took longer to resolve." *Hodge*, 948 F.3d at 164. It is instructive to compare, for instance, the outcome of this case with *Williams*. Both Henry and the defendant in *Williams* committed (or attempted) bank robbery with a firearm. Both were convicted, sentenced, and appealed. While both cases were on direct appeal, the Supreme Court decided *Dean*. We remanded both cases—*Henry* in January and *Williams* in June of 2018—for resentencing in light of *Dean*. Although we decided *Williams* after *Henry*, the district court resentenced Williams just a few months later, before the First Step Act passed, when it clearly could not apply.[5] But Henry argues that the First Step Act applies to him by virtue of the fact that his resentencing was delayed until 2019.

---

[4]Further, using legislative history to overcome the clear command of the statutory text is a double-edged sword. While the majority uses legislative history here to shorten a sentence, another court might use legislative history as a tool to lengthen one.

[5]Williams was convicted of only one count of § 924(c), so the stacking issue that the First Step Act amended would not have applied to his case. I make this point to demonstrate the inequity of applying the First Step Act to Henry, because a person in Williams's shoes who had been subject to the stacking rule would not receive the benefit of the First Step Act.

Given the vast sentencing disparities depending on whether the First Step Act applies—55 years versus 15 years in this case—it is unclear why Congress chose to extend the Act's protection to a defendant sentenced on the date of enactment but not to a defendant sentenced just one day prior. But whatever the wisdom of that decision, "Congress has . . . drawn a line in the sand." *Richardson*, 948 F.3d at 748. While Congress's determination of who may obtain relief may seem inequitable, "[t]he place to make new legislation, or address unwanted consequences of old legislation, lies in Congress." *Bostock*, 140 S. Ct. at 1753. "When it comes to statutory interpretation, our role is limited to applying the law's demands as faithfully as we can in the cases that come before us." *Id*.

The majority also argues that the rule of lenity means that any ambiguity should be construed in Henry's favor. The rule of lenity "applies only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' [we] 'can make no more than a guess as to what Congress intended.'" *Ocasio v. United States*, 136 S. Ct. 1423, 1434 n.8 (2016) (quoting *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998)). The rule of lenity does not apply because, as I have discussed, "we are left with no ambiguity . . . to resolve." *Shular v. United States*, 140 S. Ct. 779, 787 (2020). Even if there existed some surface-level ambiguity, a close reading of the text confirms that the First Step Act does not apply to Henry's case.

V.

The First Step Act does not apply to Henry's resentencing because "a sentence" for violating § 924(c) had already "been imposed" at his sentencing in 2016. This court's remand order was for the limited purpose of allowing the district court to consider reducing Henry's sentence on the underlying "crime of violence" convictions for bank robbery. The remand did not allow the district court to reopen Henry's 55-year sentence for the § 924(c) convictions. For that reason, I dissent.